**ASSOCIATION OF FLIGHT
ATTENDANTS, AFL–
CIO, Appellee,**

v.

**UNITED AIRLINES, INC., Appellant.**

No. 95–7001.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 2, 1995.

Decided Dec. 15, 1995.

Rehearing and Suggestion for Rehearing
In Banc Denied Feb. 6, 1996.

---

Robert A. Siegel, Los Angeles, argued the cause, for appellant, with whom Michael G. McGuinness, Los Angeles, and David T. Beddow, Washington, DC, were on the briefs.

Stephen B. Moldof, New York City, argued the cause, for appellee, with whom Edward J. Gilmartin, Washington, DC, was on the brief.

Before: WALD, SILBERMAN and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

United Airlines, Inc. appeals the district court order directing arbitration of a collective bargaining dispute between it and the Association of Flight Attendants (AFA). We affirm.

## I.

The facts are not disputed. UAL Corporation, which is the sole owner of United Airlines, acquired all the shares of Air Wisconsin. UAL maintained the two airlines as separate subsidiaries. The Association of Flight Attendants represents the flight attendants at both Air Wisconsin and United pursuant to National Mediation Board (NMB or Board) certifications. The AFA demanded that the Air Wisconsin flights be staffed only by flight attendants on the United Air-

lines System Seniority List under the terms and conditions of the AFA–United collective bargaining agreement, notwithstanding the AFA–Air Wisconsin collective bargaining agreement. United refused, and the AFA filed a grievance.

A 1986 side letter agreement between the parties, the source of United's purported contractual obligation, provides:

> Except as specifically provided in [another side letter agreement], neither UAL, Inc., United Airlines nor a successor, assign, or subsidiary thereof (hereinafter referred to as the "Company"), will, if such entity has a controlling interest, whether acting individually or jointly with any of the above entities, conduct any commercial flight operations of the type historically performed by United Airlines Flight Attendants, unless it performs such work with flight attendants on the United Airlines System Seniority List. Such flying shall be performed in accordance with the terms and conditions of the existing agreement or any other applicable agreement between the Company and the Union.

This scope clause agreement was incorporated verbatim into, and runs concurrently with, the post–1986 AFA–United collective bargaining agreement, which became effective September 1, 1991, and is not amendable until March 1, 1996. United refused to process this grievance, asserting that the AFA's claim fell within the Board's exclusive jurisdiction. The AFA sought an order from the district court compelling United to arbitrate its scope clause claim before the United–AFA system board of adjustment. Summary judgment was granted in favor of the AFA.

## II.

■ The parties disagree over the proper characterization of their dispute. AFA claims that it is a "minor" dispute while United argues that it is a representation dispute. The Railway Labor Act (RLA) provides different procedures for the resolution of "minor" disputes and representational dis-

putes.[1] "Minor" disputes, which " 'relate[ ] either to the meaning or proper application of a particular provision' " of a collective bargaining agreement, *Consolidated Rail Corp. v. Railway Labor Executives' Ass'n*, 491 U.S. 299, 303, 109 S.Ct. 2477, 2480, 105 L.Ed.2d 250 (1989) (quoting *Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 723, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886 (1945)), must be submitted to arbitration before a system board of adjustment for "final and binding" resolution. *See Air Line Pilots Ass'n, Int'l v. Eastern Air Lines, Inc.*, 869 F.2d 1518, 1520–21 (D.C.Cir.1989). The district court has jurisdiction to compel arbitration of such disputes. *See Western Airlines, Inc. v. International Bhd. of Teamsters*, 480 U.S. 1301, 1302, 107 S.Ct. 1515, 1515, 94 L.Ed.2d 744 (O'Connor, J.), *motion denied*, 481 U.S. 1002, 107 S.Ct. 1621, 95 L.Ed.2d 196 (1987); *Association of Flight Attendants v. Delta Air Lines, Inc.*, 879 F.2d 906, 917 (D.C.Cir.1989), *cert. denied*, 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 783 (1990). Representation issues, on the other hand, are within the *exclusive* jurisdiction of the Board to investigate, if need be, and to decide, and are not ordinarily subject to judicial review. *See Switchmen's Union of North America v. National Mediation Bd.*, 320 U.S. 297, 302–05, 64 S.Ct. 95, 97–99, 88 L.Ed. 61 (1943). The RLA provides that the NMB is to resolve "any dispute [which] arise[s] among a carrier's employees as to who are the representatives of such employees." Accordingly, the Board is given authority, in conducting an election in order to determine who is the representative, to "designate *who* may participate in the election." 45 U.S.C. § 152, Ninth (1986) (emphasis added). Such designations are labeled a "craft or class" determination. All this is common ground between the parties.

■ United argues that the district court lacked subject matter jurisdiction over the AFA's scope clause claim because the requested order encroaches upon the exclusive jurisdiction of the Board. The scope clause dispute, it is argued, raises a representation

---

1. A third category of disputes, not at issue in this case, are "major" disputes which have to be resolved through an elaborate and lengthy procedure of bargaining and mediation. *See generally*

*Consolidated Rail Corp. v. Railway Labor Executives' Ass'n*, 491 U.S. 299, 302–03, 109 S.Ct. 2477, 2480–81, 105 L.Ed.2d 250 (1989).

issue because the "NMB must first resolve the question of whether previously separate carriers have in fact combined to form a single carrier and whether the employee groups at each carrier should therefore be combined." An arbitrator's resolution of this issue would infringe upon the "continuing right of a majority of employees within each 'craft or class' at each carrier to determine whether, in the future, they desire to be represented by a particular union, or at all." United points out that federal courts, including our circuit, have addressed situations where an airline carrier has been acquired by another airline in which the union representing employees of the acquiring company attempts to enforce a scope agreement which requires the application of its collective bargaining agreement to the corresponding class of employees of the acquired carrier. And in those cases courts have concluded that the scope clause dispute implicates representation issues which can only be resolved by the NMB. *See, e.g., Flight Eng'rs' Int'l Ass'n v. Pan American World Airways, Inc.,* 896 F.2d 672, 673 (2d Cir.), *cert. denied,* 495 U.S. 953, 110 S.Ct. 2220, 109 L.Ed.2d 545 (1990); *International Bhd. of Teamsters v. Texas Int'l Airlines, Inc.,* 717 F.2d 157, 163–64 (5th Cir.1983); *Independent Union of Flight Attendants v. Pan American World Airways, Inc.,* 664 F.Supp. 156, 159–60 (S.D.N.Y.1987), *aff'd,* 836 F.2d 130 (2d Cir.1988).[2] We asked the NMB if it wished to file an *amicus* brief since the question presented went to its jurisdiction, but the Board respectfully declined stating only that the "Board has determined that paramount needs of neutrality militate against filing an *amicus* brief."

■ We think, as did the district court (and AFA), that the cases United relies on are distinguishable. It is rather obvious that if two airlines merge and their employees in the same jobs are represented by different unions the federal courts lack jurisdiction over collective bargaining claims because a representation issue is necessarily implicated. *See, e.g., Air Line Employees v. Repub-*

*lic, Inc.,* 798 F.2d 967 (7th Cir.1986); *Brotherhood of Ry. and Steamship Clerks v. United Air Lines, Inc.,* 325 F.2d 576, 579–80 (6th Cir.1963), *cert. dismissed as improvidently granted,* 379 U.S. 26, 85 S.Ct. 183, 13 L.Ed.2d 173 (1964); *cf. General Comm. of Adjustment v. Southern Pacific Co.,* 320 U.S. 338, 64 S.Ct. 142, 88 L.Ed. 85 (1943) (holding that a union's request for declaratory relief invalidating a collective bargaining agreement insofar as it designated another union as the representative of certain employees was a dispute within the exclusive jurisdiction of the NMB). The application of one union's collective bargaining agreement to another union's members would create a situation where those members would have, in effect, two representatives. But, one could no more have two exclusive representatives than, to use the old baseball expression, "two men on second base."

In *Delta Air Lines,* 879 F.2d at 912–13, and *Association of Flight Attendants v. USAir, Inc.,* 24 F.3d 1432, 1440 (D.C.Cir. 1994), we indicated our approval of the reasoning of *Texas Int'l Airlines,* 717 F.2d at 157, in which this principle was extended to a merger of a smaller unionized airline into a larger non-union one. The Fifth Circuit refused to enforce any part of the collective bargaining agreement between the carrier and the Teamsters because it perceived that the NMB's policy was normally to extinguish a certification in such situations if a representation proceeding was initiated. To enforce provisions of the contract pending that determination would be impractical even if theoretically possible. *Id.* at 164. And, of course, if the NMB were to subsequently determine that the affected employees fell within a much broader class or craft in which the union did not enjoy majority support, the contractual relationship would necessarily terminate. The court, therefore, concluded that the NMB's exclusive jurisdiction to decide representation issues was implicated.

---

2. In *Railway Labor Executives' Ass'n v. National Mediation Bd.,* 29 F.3d 655, 666–669 (en banc) (D.C.Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1392, 131 L.Ed.2d 243 (1995), we held that a representation proceeding could be initiated only by employees or their representative—not even by the NMB itself. We have not been asked to consider whether our holding in that case affects the reasoning of these cases.

In our case, both groups of employees are represented by the AFA so there is no question as to the identity of the exclusive representative. The AFA contends that fact is dispositive of the case; as the union puts it, representation issues are essentially "who" questions—which union, if any, will represent employees. United points out, however, that as a corollary, or precondition of such a determination, the NMB must determine the appropriate craft or class, or grouping of employees, to be represented by a union. Nor is such a Board craft or class designation only made at the time an election is to be held. United points to a recent NMB case in which the Board determined the appropriate class or craft after a merger of four airlines, all represented by the same union. *See U.S. Air Express,* 18 N.M.B. 441 (1991). Although the carriers urged that the union's application should be dismissed because no representation dispute was raised, the Board rejected that argument, holding that whether the "carriers will be treated separately or combined for representation purposes or whether their respective employees fall within one or more crafts or classes" are representation questions within the Board's exclusive jurisdiction. *Id.* at 444.

The case comes down then to the question whether the district court's order interferes legally or practically with the Board's capacity, *at any time*—whether in connection with an election or otherwise—to determine whether the flight attendants at both airlines constitute one or separate crafts or classes. We do not think so. The Board itself has stated "that carriers and labor organizations are free to include any employee classifications under a voluntary recognition agreement, [but] once a representation dispute is brought before the Board ... [such an agreement] ... cannot dictate the Board's craft or class findings." *Aircal,* 14 N.M.B. 33, 42–43 (1986). Collective bargaining

agreements, it should be remembered, are not necessarily coextensive with bargaining units. It is rather common, for instance, for a multi-employer bargaining group to arrive at one contract covering separate employers and therefore separate bargaining units. And there is no barrier to an employer and union agreeing to separate contracts covering different groups of employees—although the Board discourages it—within the same Board-certified craft or class. Nor do we perceive any problems, such as the Fifth Circuit saw in *Texas Int'l Airlines,* 717 F.2d at 164, creating friction between a court order enforcing arbitration, leading perhaps to the application of the United agreement to the Wisconsin flight attendants, and a subsequent Board determination of the craft or class for RLA purposes.[3] To be sure, the Board might well be influenced, in a subsequent representation proceeding, by an extension of the terms of the AFA–United agreement to the Wisconsin flight attendants, with perhaps modifications agreed to by United and the AFA, and any experience the parties gain under that situation, but the important point is that the Board is free to make its own decision on that issue. In the event that the Wisconsin flight attendants (the only likely petitioner) were to apply to the Board for a separate craft or class determination and were successful, the AFA–United contract insofar as it was applied to the Wisconsin flight attendants would presumably be terminated, *see id.*—at least as to the union's rights to continue to represent the employees. *Cf. Air Line Pilots Ass'n v. Department of Transp.,* 838 F.2d 563, 566 n. 5 (D.C.Cir.1988) (leaving open the question of whether a collective bargaining agreement is extinguished even if the affected employees will be denied vested rights under the agreement). But under those circumstances, the Wisconsin flight attendants would likely be

---

**3.** The court in *Texas Int'l Airlines* reasoned that enforcement of the contract would result in a situation where the union retained its bargaining responsibilities despite the NMB "rule" that upon a merger of two airlines all certifications are extinguished by law. Allowing the union to remain *de facto* the representative of its premerger members would frustrate the NMB goal behind this "rule" of avoiding "uneven represen-

tation, duplication of effort, and confusion." *Id.* at 163 (citation omitted). While not taking a position on the validity of this reasoning, a facet of *Texas Int'l Airlines* that *Delta Air Lines* and *USAir* did not focus on, the enforcement of the side letter agreement would not result in the frustration of any NMB policy as far as we can ascertain.

either unrepresented or represented by a different union.

\* \* \* \* \* \* .

For the preceding reasons, we hold that the AFA's claim must proceed to arbitration.