**Greg NEWSOME, et al., Plaintiffs,**

v.

**NORTHWEST AIRLINES CORP., Northwest Airlines, Inc., International Association of Machinists & Aerospace Workers and Aircraft Mechanics Fraternal Association, Defendants.**

No. 02–2203 D A.

United States District Court,
W.D. Tennessee,
Western Division.

Oct. 8, 2002.

Ralph T. Gibson, Stephanie Camille Reifes, Bateman, Gibson & Childers, Memphis, TN, for Plaintiffs.

Stephen D. Goodwin, Baker, Donelson, Bearman & Caldwell, Memphis, TN, John J. Gallagher, Kenneth M. Willner, Paul, Hastings, Janofsky & Wakler, LLP, Washington, DC, for Northwest Airlines Corp.

Joseph Guerrieri, Jr., Jeffrey A. Bartos, Guerrieri, Edmond & Clayman, Washington, DC, for Intern. Assoc. of Machinists and Aerospace Workers.

## ORDER DENYING AMFA'S AND NORTHWEST'S MOTIONS TO DISMISS; AND GRANTING NORTHWEST AIRLINES CORP.'S AND IAM'S MOTIONS TO DISMISS; AND STAYING THE PROCEEDINGS

DONALD, District Judge.

Plaintiffs, Greg Newsome, et al., filed a complaint against Defendants, Northwest Airlines Corporation ("NAC");[1] Northwest Airlines, Incorporated ("Northwest"); the International Association of Machinists and Aerospace Workers ("IAM"); and the Aircraft Mechanics Fraternal Association ("AMFA"), on March 21, 2002. Plaintiffs amended their complaint on March 6, 2002. The Court granted Plaintiffs leave to file a second amended complaint which Plaintiffs filed on May 17, 2002. AMFA, IAM, and Northwest filed independent motions to dismiss the complaints pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the following reasons, this Court denies AMFA's and Northwest's motions to dismiss, and grants IAM's motion to dismiss.

---

1. NAC is the parent company of Northwest Airlines, Inc. ("Northwest"). NAC is not a "carrier" covered by the Railway Labor Act ("RLA"). Plaintiffs do not dispute NAC's assertion that it employs no one subject to the RLA. Accordingly, this Court finds that NAC has been improperly named as a defendant. The motion to dismiss as to NAC is therefore granted.

## I. BACKGROUND

Northwest is a certified air carrier. Pursuant to section 201 of the Railway Labor Act ("RLA"), 45 U.S.C. § 181, Northwest is classified as a "common carrier by air engaged in interstate or foreign commerce." Plaintiffs include sixty-four Northwest employees.

IAM is an unincorporated labor organization. IAM is the certified representative of Northwest employees in the Clerical, Office, Fleet and Passenger Service ("COFPS") craft or class. Prior to 1999, IAM represented Northwest employees who were members of the Mechanics and Related craft or class. Effective June 1, 1999, however, AMFA, another unincorporated labor organization, became the representative of Northwest's Mechanics and Related employees. AMFA assumed and administered the existing Northwest/IAM contract until a new collective bargaining agreement ("CBA") was negotiated in 2001. AMFA and Northwest signed the new agreement on May 11, 2001.

AMFA represents twenty-nine of the Plaintiffs who are Northwest mechanics. Another twenty-six of the Plaintiffs took jobs in the Mechanics and Related class or craft more than a year before the date of the events of late September 2001, and are likewise represented by AMFA. Prior to accepting these jobs, these twenty-six Plaintiffs were represented by IAM. One of the Plaintiffs is a former IAM-represented Equipment Service Employee who was laid off from that position but later moved into an AMFA-represented Cleaner position. Six of the Plaintiffs are Customer Service Agents who are represented by IAM.[2]

On September 11, 2001, terrorists hijacked and intentionally crashed four commercial aircraft operated by two United States air carriers. Northwest asserts that the devastating effect this event had on the airline industry necessitated the layoff of a substantial number of its employees on September 20, 2001. Among these employees, some were covered by the CBAs of AMFA and IAM. Northwest claims that the force majeure clause in each of the CBAs permitted it to take such action. Plaintiffs assert that Northwest improperly utilized the force majeure clause to layoff Plaintiffs covered under the IAM and AMFA CBAs. As a result of the layoffs, Plaintiffs allege that they have been adversely affected by Northwest's unfair labor practices, breach of the fiduciary obligation to plaintiffs, breach of contract, and breach of the duty to fairly represent Plaintiffs.

In response to the September 20, 2001, layoffs IAM published a notice to IAM members on September 21, 2001, that stated, "We intend to enforce the collective bargaining agreements at every carrier and company where we represent employees." AMFA also published a notice to its members that provided, "AMFA National will file an Association grievance for all members that will cover all aspects of this dispute for every violation tied to this action. Members should not need to file individual grievances." AMFA filed a grievance appeal form on September 25, 2001, with Northwest's Labor Relations Department on behalf of those AMFA-represented employees who were laid off. Plaintiffs assert that IAM has not filed or pursued a grievance against Northwest.

Plaintiffs assert claims for breach of contract by Northwest under the CBAs and breach of the duty of fair representation by IAM and AMFA. In support of

---

**2.** Northwest asserts that it has no record that two of the Plaintiffs, Thomas Psoukalas and Sherry Jacobs, ever worked for it. Northwest, however, assumes for purposes of this motion that these Plaintiffs' allegations of employment at Northwest are true.

Plaintiffs' claim for breach of contract, Plaintiffs assert that Northwest has outsourced work previously performed by Plaintiffs in violation of the CBAs. Plaintiffs also allege that Northwest has violated the CBAs because AirLink, a Northwest subsidiary, has hired new employees since the lay off, and the CBAs entitle the laid off employees to be recalled by AirLink before any new employees are hired. Northwest allegedly required workers to work overtime to replace the work done by the laid off employees. Plaintiffs argue that the CBAs prevent Plaintiffs' jobs from being replaced by overtime work.

In support of Plaintiffs' claim for breach of the duty of fair representation, Plaintiffs assert that IAM acted in bad faith and with hostile discrimination and used unfair labor practices in an attempt to prevent IAM-represented employees from becoming AMFA-represented employees. This alleged hostile discrimination and bad faith by IAM to AMFA establishes that IAM and AMFA have not adequately protected Plaintiffs. Furthermore, Plaintiffs maintain that AMFA and IAM have failed to take action to enforce the CBAs against Northwest. Specifically, Plaintiffs assert that IAM and AMFA have not filed grievances against Northwest based upon Northwest's outsourcing, AirLink's hiring, and Northwest's use of overtime. Moreover, IAM and AMFA arbitrarily and perfunctorily refused to take steps to resolve Northwest's asserted improper use of the force majeure clause. Plaintiffs allege that Northwest has unlawfully taken advantage of the hostility between IAM and AMFA to deny the Plaintiffs' rights under the CBAs. Plaintiffs assert that Northwest, AMFA, and IAM have colluded not to press arbitration and conspired to breach the CBAs.

Plaintiffs, who were represented by IAM prior to June of 1999, assert that they continued to be covered by the IAM CBA with Northwest until May 12, 2001, the date the CBA between AMFA and Northwest became effective. Pursuant to a clause [3] in the IAM CBA, these Plaintiffs allege that they retained their seniority rights under the IAM agreement until May 12, 2002. Plaintiffs assert that Northwest and IAM refused to recognize the seniority rights of those employees represented by IAM prior to June of 1999. As such, these Plaintiffs claim that Northwest breached its agreement with them and that IAM and AMFA breached its duty of fair representation. Plaintiffs also assert that Defendants conspired to deny these Plaintiffs their seniority rights under the IAM CBA with Northwest.

## II. MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal for lack of jurisdiction over the subject matter, while Rule 12(b)(6) addresses the failure to state a claim upon which relief may be granted. A motion to dismiss may only be granted "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In considering a motion to dismiss, "the court must construe the complaint in a light most favorable to the plaintiff, and accept all of [the] factual allegations as true." *Bird v. Parsons,* 289 F.3d 865, 871 (6th Cir.2002) (quoting *Jackson v. City of*

---

**3.** Article 10 E3 of IAM's CBA with Northwest provides that

An employee transferred to a permanent position not covered by any IAM/NWA agreement by bid will retain seniority until such time as his/her accumulated active service outside this Agreement totals 12 months from the date of his/her transfer, after which he/she will lose his/her seniority in all classifications covered by this Agreement.

*Columbus,* 194 F.3d 737, 745 (6th Cir. 1999)).

## III. ANALYSIS

■■■ Defendants assert that Plaintiffs' complaint should be dismissed because this Court lacks subject matter jurisdiction. The RLA governs disputes between an employee and a carrier that arise out of the interpretation and application of the collective bargaining agreement, referred to as "minor disputes." *Kaschak v. Consol. Rail Corp.,* 707 F.2d 902, 904 (6th Cir.1983). Title 45 U.S.C. § 153 provides:

> The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, including cases pending and unadjusted [on the date of approval of this Act], shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes.

This section has been interpreted to vest exclusive jurisdiction over minor dispute resolution with the National Adjustment Board. *Kaschak,* 707 F.2d at 905. Minor disputes must first be handled through the grievance procedures contained in the parties' collective bargaining agreement. 45 U.S.C. § 153(i). An unresolved dispute may then be submitted to arbitration. *Id.* Arbitration is the "mandatory, exclusive, and comprehensive system" for resolving minor disputes. *Bhd. of Locomotive Eng's v. Louisville & N.R.R. Co.,* 373 U.S. 33, 38, 83 S.Ct. 1059, 10 L.Ed.2d 172 (1963). An employee must therefore "at least attempt to use and exhaust the contractual griev-

ance procedure before seeking judicial review of his claim." *Atkins v. Louisville and Nashville R.R. Co.,* 819 F.2d 644, 649 (6th Cir.1987)(*citing Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965)). Several exceptions to this general requirement, however, have been recognized. *Id.*

■■■ An employee may pursue an action in a federal court despite failing to fully exhaust contractual remedies when (1) "the union has the 'sole power' under the contract to invoke the upper level grievance procedures and yet prevents an employee from exhausting contractual remedies by wrongfully refusing to process the employee's grievance in violation of its duty of fair representation; (2)[ ] the employer's conduct amounts to a repudiation of the remedial procedures specified in the contract," *id.*(*citing Vaca v. Sipes,* 386 U.S. 171, 185–86, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)), and (3) "the effort to proceed formally with contractual or administrative remedies would be wholly futile." *Glover v. St. Louis–San Francisco Railway Co.,* 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969).

### A. AMFA

Plaintiffs allege that AMFA has breached the duty of fair representation because AMFA has not filed grievances against Northwest based upon Northwest's outsourcing, AirLink's hiring, and Northwest's use of overtime. Moreover, Plaintiffs assert that AMFA arbitrarily and perfunctorily refused to take steps to resolve Northwest's allegedly improper use of the force majeure clause, despite AMFA's notice to its members that "AMFA National will file an Association grievance for all members that will cover all aspects of this dispute for every violation tied to this action. Members should not need to file individual grievances."

Plaintiffs also assert that Northwest, AMFA, and IAM have colluded not to press arbitration and conspired to breach the CBAs. AMFA asserts, however, that it has pursued a grievance against Northwest with regards to the layoff. Plaintiffs therefore cannot maintain an action for breach of the duty of fair representation.

The AMFA/Northwest CBA states:

Before filing a grievance, an employee(s) must present his complaint directly or through his Shop Representative to his immediate supervisor or local management. This presentation may be verbal but must be made within 30 calender days after the date on which the employee(s) knew or should have reasonably have been expected to know of the cause giving rise to the complaint. The immediate supervisor or local management will discuss the complaint with the employee(s) and/or his Shop Representative in a good faith informal endeavor to arrive at a satisfactory settlement of the dispute and will issue a reply within 10 calender days. Such reply may be verbal.

Article 13(C)(1). Plaintiffs therefore were capable of filing their own grievances. A review of the exhibits filed in conjunction with the motions to dismiss verifies that AMFA filed a class action grievance on September 25, 2001, on behalf of each AMFA-represented member affected by the layoff. Plaintiffs do not dispute that AMFA filed a grievance. Plaintiffs assert that AMFA failed to follow the appropriate procedures when filing the grievance. Accordingly, Northwest will be able to use this as an affirmative defense.[4]

Plaintiffs also assert that AMFA failed to file timely grievances with respect to Northwest's outsourcing, AirLink's hiring, and Northwest's use of overtime. Plaintiffs allege that because of AMFA's representation that individual members would not need to file grievances, they failed to file grievances. Nothing in the pleadings and affidavits refutes Plaintiffs' assertions that AMFA failed to file specific grievances as to Northwest's outsourcing, AirLink's hiring, and Northwest's use of overtime. AMFA argues, however, that the grievance filed on September 25, 2001, encompasses the issues of outsourcing, overtime, and hiring because a resolution of the force majeure issue will necessarily resolve the other issues. With these assertions in mind, this Court will now determine whether Plaintiffs have sufficiently alleged a breach of the duty of fair representation as to AMFA.

 One instance in which a federal court may exercise jurisdiction over a minor dispute is when an employee establishes that the representative union breached its duty of fair representation at which time the employee may also pursue an action against an employer in a federal court for a violation of the CBA. *Kaiser v. United States Postal Service,* 908 F.2d 47, 49 (6th Cir.1990) (citation omitted). To establish a breach of the duty of fair representation, the employee "must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress." *Id.* (*quoting Republic Steel Corp.,* 379 U.S. at 652, 85 S.Ct. 614). A federal court may properly exercise jurisdiction over the case if the court determines that (1) the employee relied upon his union to process the grievance, (2) such reliance was reasonable in the circumstances, and (3) it was that reliance which caused the employee's failure to personally

4. Northwest and AMFA allege that they are currently attempting to schedule a date for the arbitration of the grievance, possibly as soon as October of 2002. Neither party has denied that the arbitration of the grievance will occur nor have they argued that the grievance is barred procedurally.

present the claim to the Board. *Kaschak,* 707 F.2d at 904. A breach of the duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith. *Vaca,* 386 U.S. at 190, 87 S.Ct. 903.

■ It is well established that when ruling on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Construing the complaint and affidavits in the light most favorable to the Plaintiffs, this Court finds that Plaintiffs have plead sufficient facts to establish (1) that they relied upon AMFA to process the grievances based upon AMFA's statements, (2) that the reliance was reasonable in light of the substantial number of employees affected by the layoffs, and (3) that Plaintiffs' reliance caused them to refrain from personally presenting their claims to the Board. *See Kaschak,* 707 F.2d at 913 (holding that only after plaintiff made such an initial showing could plaintiff proceed to pursue a claim against the employer). AMFA made a specific representation that members would not need to file grievances. Affidavits filed by Plaintiffs assert that they repeatedly approached AMFA about the status of the grievance. Given the substantial number of AMFA-represented employees affected by Northwest's action, it is not unreasonable to expect that AMFA would in fact file a class action grievance to streamline the process. This assumption is supported by AMFA's assertion that stated that it would "file" a grievance. Accordingly, this Court denies AMFA's motion to dismiss because the Plaintiffs' have alleged sufficient facts to establish a breach of the duty of fair representation.

■ Whether AMFA breached the duty of fair representation, however, is dependent upon the results of the arbitration of AMFA's September 25, 2001, grievance. For instance, the arbitrator will necessarily determine whether AMFA failed to follow the proper procedure when it filed the grievance. Furthermore, upon resolution of the grievance concerning the force majeure clause, it will be clear whether the issues pertaining to outsourcing, hiring, and overtime were encompassed in the resolution. This action is stayed, therefore, pending the outcome of the arbitration of AMFA's grievance because the subject matter jurisdiction of this Court, based upon Plaintiffs' claim for a breach of the duty of fair representation, is dependent upon whether the Plaintiffs' allegations are substantiated. *See Landis v. North American Co.,* 299 U.S. 248, 254–55, 57 S.Ct. 163, 81 L.Ed. 153 (1936) (stating that "[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.").

**B. IAM**

In support of Plaintiffs' claim for breach of the duty of fair representation, Plaintiffs assert that IAM acted in bad faith and with hostile discrimination and used unfair labor practices in an attempt to prevent IAM-represented employees from becoming AMFA-represented employees. This hostile discrimination and bad faith by IAM to AMFA allegedly establishes that IAM and AMFA have not adequately protected Plaintiffs. Furthermore, Plaintiffs maintain that IAM has failed to take action to enforce the CBA against Northwest. Specifically, Plaintiffs assert that IAM has

not filed grievances against Northwest based upon Northwest's outsourcing, Air-Link's hiring, and Northwest's use of overtime. Moreover, IAM arbitrarily and perfunctorily refused to take steps to resolve Northwest's asserted improper use of the force majeure clause. Plaintiffs assert that Northwest, AMFA, and IAM have colluded not to press arbitration and conspired to breach the CBAs.

In support of these allegations, Plaintiffs assert that IAM has not filed or pursued a grievance against Northwest as to the force majeure issue. In response to the September 20, 2001, layoffs IAM published a notice to IAM members on September 21, 2001, that stated, "We intend to enforce the collective bargaining agreements at every carrier and company where we represent employees." Plaintiffs argue that they failed to file grievances based upon IAM's statements. IAM alleges that it is, however, handling class action grievances initiated by IAM-represented employees on behalf of all of the affected COFPS employees at Northwest. IAM communicated on September 24, 2001; September 27, 2001; and October 25, 2001, through written postings on IAM bulletin boards throughout Northwest. These postings advised members to contact their local grievance committee if they felt that the CBA had been violated pertaining to the layoff or seniority procedures. The October 25, 2001, posting specifically states with respect to the alleged force majeure issue, "The members must initiate the grievance."

■ As discussed previously, under the first exception to the general rule that federal courts may not adjudicate RLA minor disputes, an employee must first establish that the representative union breached its duty of fair representation. Under the first exception to the general rule that federal courts may not hear minor disputes, a federal court may exercise jurisdiction when an employee establishes that the representative union breached its duty of fair representation at which time the employee may also recover against an employer in a federal court for a violation of the CBA. *Kaiser,* 908 F.2d at 49 (citation omitted). To establish a breach of the *duty of fair representation, the employee* "must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress." *Id.* (*quoting Republic Steel Corp.,* 379 U.S. at 652, 85 S.Ct. 614). To establish that a union has breached the duty of fair representation, a plaintiff must show that (1) the employee relied upon his union to process the grievance, (2) such reliance was reasonable in the circumstances, and (3) it *was that reliance which caused the em*ployee's failure to personally present the claim to the Board. *Kaschak,* 707 F.2d at 904. A breach of the duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith. *Vaca,* 386 U.S. at 190, 87 S.Ct. 903.

This Court finds that Plaintiffs have failed to allege sufficient facts to establish that their reliance that IAM would file a grievance on their behalf was reasonable in light of the circumstances. The court recognizes that Plaintiffs have alleged in their complaint and accompanying affidavits that they relied upon IAM to process their grievances based upon IAM's statements and representations. The Plaintiffs fail to establish, however, that this reliance was reasonable in light of the circumstances. At least three statements were posted urging members to initiate a grievance. Plaintiffs should have known to initiate grievances when IAM representatives failed to respond to inquiries coupled with IAM's numerous published notices. It is not reasonable under these circumstances to assume that IAM would initiate the

grievances. Furthermore, the exhibits filed by IAM indicate that the class action grievances that were filed by its members are now being pressed to arbitration by IAM. Accordingly, no indication exists that IAM has acted in an arbitrary, discriminatory, or bad faith manner as to the grievances related to the force majeure clause, Northwest's outsourcing, Airlink's hiring, and Northwest's use of overtime.

■ Likewise, there is no indication that Northwest's conduct amounts to a repudiation of the remedial procedures specified in the contract. Grievances that have been filed by both IAM and AMFA or their members have been processed by Northwest. Many grievances are in fact still awaiting arbitration. The only clear example given by Plaintiffs in support of the assertion that Northwest has repudiated the remedial procedures specified in the contract is that Northwest has refused to negotiate as evidenced by the length of time for the parties to schedule arbitration dates. This does not amount to a repudiation of the contract. Northwest has not refused to arbitrate. Given the numerous grievances filed in conjunction with Northwest's actions of September 20, 2001, one year is not an egregious delay.

■ Finally, Plaintiffs' assertions that the effort to proceed formally with contractual or administrative remedies would be futile are not sufficient. Plaintiffs argue that moving forward with this case would be futile because Northwest will raise the affirmative defense that the grievances were not timely filed. With respect to IAM-members, the only apparent reason to view this defense as viable is the inaction of the Plaintiffs in failing to file grievances. Plaintiffs failed to file grievances as to the issues of the force majeure layoff, overtime, hiring, and outsourcing. Accordingly, Plaintiffs' inaction is the cause of any supposed futility in proceeding to arbitration.

Plaintiffs have failed to establish that they exhausted their contractual remedies prior to seeking review in this Court. Furthermore, Plaintiffs have failed to establish that this Court has jurisdiction pursuant to the exceptions stated in *Vaca* and *Glover.* Considering Plaintiffs' complaint with respect to Count I in a light most favorable to the Plaintiffs, this Court finds that the Court lacks subject matter jurisdiction as to Plaintiffs' allegations concerning IAM. Accordingly, IAM's motion to dismiss as to Count I is granted.

■ In Count II of the complaint, Plaintiffs, who were represented by IAM prior to June of 1999, assert that they continued to be covered by the IAM CBA with Northwest until May 12, 2001, the date the CBA between AMFA and Northwest became effective. Pursuant to a clause in the IAM CBA, these Plaintiffs allege that they retained their seniority rights under the IAM agreement until May 12, 2002. Plaintiffs assert that Northwest and IAM refused to recognize the seniority rights of those employees represented by IAM prior to June 1999. As such, these Plaintiffs claim that IAM and AMFA breached its duty of fair representation. Plaintiffs also assert that Defendants conspired to deny these Plaintiffs their seniority rights under the IAM CBA with Northwest.

IAM asserts that Plaintiffs failed to state a claim upon which relief may be granted because, as a matter of law, IAM is not the collective bargaining representative for these Plaintiffs. Therefore, IAM owes no duty of fair representation to these plaintiffs, and as a result they lack standing to pursue such a claim against the IAM. The National Mediation Board ("Board") certifies the exclusive bargaining representative for an employee group. 45 U.S.C. § 152, Ninth. After a union election, the Board issues a formal certifica-

tion. It is a violation of the RLA for a carrier to treat another representative as the bargaining agent of the craft or class when a bargaining representative has been certified. *Id.* As one court stated, "[O]ne could no more have two exclusive representatives than ... 'two men on second base.'" *AFA v. United Airlines Inc.*, 71 F.3d 915, 918 (D.C.Cir.1995). The duty of fair representation arises from the union's statutory authority as the exclusive bargaining representative for the employees in the bargaining unit. *Id.*

In this case the facts are undisputed that after the election, AMFA was certified by the Board in June of 1999 as the bargaining representative of the Mechanics and Related class or craft. AMFA thereafter assumed the responsibility for administering the CBA that existed. *See Breininger v. Sheet Metal Workers Int'l Ass'n*, 493 U.S. 67, 88, 110 S.Ct. 424, 107 L.Ed.2d 388 (1989). AMFA succeeded to the agreement in existence between Northwest and IAM until a new CBA was ratified. Thus, although the IAM CBA remained in effect until May 12, 2001, when AMFA and Northwest entered into a new CBA, IAM ceased to be the exclusive bargaining representative of these Plaintiffs in June of 1999. As such, AMFA was required to administer the IAM CBA. Accordingly, any dispute concerning the enforcement of the seniority clause of the IAM CBA was relegated to AMFA. As a matter of law, IAM cannot be held to have breached the duty of fair representation as to these employees because IAM was not the exclusive bargaining agent of the Plaintiffs. IAM was not required to grieve the seniority issue. Count II of Plaintiff's complaint is therefore dismissed as to IAM.

## C. Northwest

Northwest asserts that this Court lacks subject matter jurisdiction. A federal court may exercise jurisdiction over a minor dispute when an employee establishes that the representative union breached its duty of fair representation at which time the employee may also pursue an action against an employer in a federal court for a violation of the CBA. *Kaiser v. United States Postal Service*, 908 F.2d 47, 49 (6th Cir.1990) (citation omitted). As discussed previously, this Court determined that Plaintiffs have alleged sufficient facts to establish a breach of the duty of fair representation against AMFA. Accordingly, this Court maintains subject matter jurisdiction over Plaintiffs' claim against Northwest for breach of contract.

Likewise, the Court determined that whether AMFA breached the duty of fair representation is dependent upon the results of the arbitration of AMFA's September 25, 2001, grievance. As such, this Court stayed the action pending the outcome of the arbitration on AMFA's grievance because the subject matter jurisdiction of this Court is dependent upon whether the Plaintiffs' allegations are substantiated. *See Landis v. North American Co.*, 299 U.S. 248, 254–55, 57 S.Ct. 163, 81 L.Ed. 153 (1936) (stating that "[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance."). For the same reasons, Northwest's motion to dismiss is denied, and the matter is stayed pending arbitration between Northwest and AMFA.

## IV. CONCLUSION

For the foregoing reasons, AMFA's motion to dismiss is DENIED; IAM's motion to dismiss is GRANTED; NAC's motion to dismiss is GRANTED; and Northwest's

motion to dismiss is DENIED. The case is stayed pending the arbitration of AMFA's claim against Northwest.